**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AMERCO REAL ESTATE COMPANY** | : | |
| **successor in interest to U.S. BANK** | : | |
| **NATIONAL ASSOCIATION as Trustee** | : | |
| **for the registered holders of** | : | |
| **CD 2007-CD4 Commercial Mortgage** | : | |
| **Trust, Commercial Mortgage** | : | **Civil No. 3:11-CV-1166** |
| **Pass-Through Certificates,** | : | |
| **Series CD 2007-CD4,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **APPALACHIAN SELF-STORAGE,** | : | |
| **LLC,** | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM OPINION AND ORDER**

## I.   INTRODUCTION

Plaintiff U.S. Bank National Association ("U.S. Bank" or "lender") initially brought suit to foreclose on a commercial mortgage given by Defendant Appalachian Self-Storage ("Appalachian" or "borrower") with respect to real property in Wilkes-Barre, Pennsylvania, which secured a commercial mortgage loan in the original principal amount of $2.4 million.

Now pending before the Court are two motions.

First, we must consider U.S. Bank's motion for summary judgment on the complaint, in which the lender seeks to have judgment entered against Plaintiff for outstanding unpaid amounts owed under the mortgage, to have the promissory note and mortgage between U.S. Bank and Appalachian foreclosed as to the real property subject to the mortgage, and to allow the mortgaged real property to be sold. The motion is fully briefed and ripe for disposition.[1]  For the reasons discussed below, we find it to be undisputed that Defendant is in default of its obligations under the note and mortgage, and we find further that Defendant has presented no legitimate defense to this foreclosure action, or any dispute of material fact that would make the entry of summary judgment on Plaintiff's claim inappropriate.

Furthermore, for the reasons explained below, we reject Defendant's motion to strike certain evidence from the evidentiary record, or to enlarge the discovery period in this case, on the grounds that Plaintiff failed to timely produce relevant evidence as part of its initial and supplemental disclosures, or otherwise in response to discovery requests.  In this regard, it is important to note that none of these discovery issues relate to the fact of the Defendant's default on this mortgage. Rather, it is entirely undisputed that the Defendant is, and has been, in default.

---

[1] On August 24, 2011, the parties consented to proceed before the undersigned as the presiding judicial officer in these proceedings.  (Doc. 14.)

Instead, this discovery dispute relates simply to the adequacy of the proof of U.S. Bank's interest in this mortgage, a mortgage that is plainly in default.

We find no basis to disregard this evidence. We also find that Plaintiff has not shirked its discovery obligations to Defendant, and can perceive of no unfair prejudice to Defendant in considering these documents as part of our analysis of Plaintiff's summary judgment motion. Indeed, we find it would be inappropriate, and would serve no legitimate purpose, either to strike certain documents or to open discovery in an action where Defendant has conceded it that it is in default under the loans, and where foreclosure is plainly permissible. Furthermore, Defendant has not identified any facts that they believe they could discover that might create a genuine dispute of material fact regarding U.S. Bank's interest in this loan that would make summary judgment inappropriate. To the contrary, Defendant's motion to strike evidence, or enlarge discovery, seems nothing more than a last-ditch effort to delay the inevitable foreclosure on a mortgage on which Defendant has admittedly made no payments at all since April 2011. Since we find no basis to grant this relief, we will deny Defendant's motion and grant Plaintiff's motion for summary judgment.

Finally, we observe that while the summary judgment motion was pending, and around the time the parties were engaging in settlement negotiations with respect to this matter, U.S. Bank and Amerco Real Estate Company ("Amerco") jointly moved

to have Amerco substituted as the plaintiff in this action pursuant to Federal Rule of Civil Procedure 25(c), following the assignment on June 5, 2012 of U.S. Bank's right, title, and interest in the loan, note, and mortgage that are at issue in this action. (Doc. 48.)  Although Defendant has filed a brief opposing this motion, (Doc. 52.), that motion simply restated the Defendant's speculative assertion that U.S. bank may not possess sufficient interest in this loan which may be transferred to Amerco.  Because we have rejected this speculative assertion on its merits, we further find there to be no reasonable basis to deny the requested relief, and Amerco will be substituted as the proper Plaintiff entitled to foreclose on the mortgage.

## II.   **BACKGROUND**

On or about December 28, 2006, LaSalle Bank National Association ("LaSalle") made a commercial mortgage loan to Appalachian in the amount of $2.4 million.  The loan is evidenced by a promissory note in the principal amount of $2.4 million, which Appalachian executed on or about December 28, 2006, in favor of LaSalle "and its successors and assigns" (the "Note").  (Doc. 24-4, Affidavit of Alexander M. Killick ("Killick Aff."), Ex. A, Note.)

In order to secure its obligations under the Note, Appalachian also executed an Open-End Mortgage, Security Agreement and Fixture Filing (the "Mortgage") in favor of LaSalle "and its successors and assigns as holders of the Note".  (Killick

4

Aff., Ex. B, Mortgage.)  The Mortgage secures the property Defendant owned and operated as "Appalachian Self Storage" situated at 3 Heinz Drive in Wilkes-Barre, Pennsylvania, and was recorded with the Recorder of Deeds for Luzerne County, Pennsylvania on January 3, 2007, as Instrument Number 5743525, in Book 3007, Page 2310.  (Id.)  The Note and Mortgage contained provisions that authorized LaSalle to sell or assign the loan, including the servicing rights under the loan, the Note, the Mortgage, and other loan documents, and to do so without Appalachian's consent, stating in clear and precise terms that:

> Lender may, at any time and without the consent of Borrower or and Guarantor, grant participations in or sell, transfer, securitize, assign and convey all or any portion of its right, title, and interest in and to the Loan, the servicing of the Loan, this Note, the Mortgage, and the other Loan Documents, any guaranties given in connection with the Loan and any collateral given to secure the Loan.

(Killick Aff., Ex. A, Note § 8; Killick Aff., Ex. B, Mortgage § 42.)

The following year, the Loan was assigned as part of a Pooling and Servicing Agreement between a number of financial institutions, including CitiGroup Commercial Mortgage Securities Inc., which was responsible for placing mortgage loans in an investment vehicle in which third-party investors could purchase interests, and Wells Fargo Bank, National Association, which served as the Trustee.  Included among the mortgage loans that were included in this investment vehicle were loans

held by LaSalle, including the Appalachian Self Storage Loan.  (Killick Aff., Ex. I, Pooling and Servicing Agreement, Schedule I.)

The Pooling and Service Agreement, and other related documents, provided for LaSalle to assign its subject loans, including the Appalachian Self Storage Loan, to Wells Fargo as the Trustee.  (Id.)  In accordance with these assignment provisions, on March 29, 2007, LaSalle completed an allonge to the notes that were being assigned, and assigned each mortgage to "Wells Fargo, National Association, as trustee for the registered holders of CD 2007-CD4 Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series CD 2007-CD4."  (Killick Aff., Ex. J, LaSalle Mortgage Loan Purchase Agreement §§ 2(c)(I), 2(c)(iv).)  The Appalachian Self Storage Loan, including the Note and Mortgage, were assigned in accordance with the assignment provisions set forth in the Pooling and Servicing Agreement, and the related LaSalle Mortgage Loan Purchase Agreement.  The documents evidencing the assignment of the Mortgage were recorded with the Recorder of Deeds for Luzerne County, Pennsylvania, on January 7, 2008, as Instrument No. 5802144, in Book 3008, Page 4012.  (Killick Aff., Ex. E.)

On June 30, 2009, U.S. Bank replaced Wells Fargo as the Trustee for the Trust. (Killick Aff., Ex. L, M.)  In accordance with this transfer of the trustee duties to U.S. Bank, and in accordance with the provisions of the Pooling and Service Agreement,

Wells Fargo executed in favor of U.S. Bank documents to effect the assignment of the Loan, an allonge for the Note, and an assignment of the Mortgage.  (Killick Aff., Ex. F, G, H.)   The mortgage assignment was subsequently recorded with the Recorder's Office of Luzerne County, Pennsylvania on June 28, 2010, as Instrument No. 5920772, in Book 3010, Page 107161.  (Killick Aff., Ex. H.)

In accordance with the terms of the Note and the Mortgage, Plaintiff was obligated to pay to U.S. Bank on the first of each month principal and interest in the amount of $14,683.69, (Killick Aff., Ex. A, Note § 1), together with other charges due to be paid under the Mortgage for taxes, insurance, and replacement reserves, (Killick Aff., Ex. B, Mortgage § 3).  Other than the replacement reserve monthly payment, which is $695.75, the mortgage does not provide the specific amounts that are due to be paid each month for taxes and insurance.  However, Defendant admitted in its answer that the aggregate monthly payment had been $20,408.83 until August 2010, when Defendant unilaterally reduced its payment to the lender to $14,683 – a payment that only covered the required principal and interest charges.  (Doc. 10, Answer ¶ 13(ii).)

Section 7.1 of the Note defines an "Event of Default" to include, *inter alia*, the borrower's "failure to pay any amounts owed pursuant to this Note within five (5) days after such payment is due."  (Killick Aff., Ex. 1, Note § 7.1.)  The Mortgage

similarly defines an "Event of Default" to include "Borrower's failure to pay . . . within five (5) days of the due date, any of the Indebtedness, including any payment due under the Note."  (Killick Aff., Ex. 2, Mortgage § 21(a).)

In addition to the foregoing default provisions, the Note provides for late charges and a default interest rate upon a payment default, and both the Note and the Mortgage contain acceleration clauses that provide for the outstanding indebtedness due under the Note and Mortgage to become due and payable immediately.  (Killick Aff., Ex. 1, Note § 7.2; Ex. 2, Mortgage § 22.)  The Mortgage also authorizes the lender to "institute and maintain an action of mortgage foreclosure against any of the Property, through judicial proceedings or by advertisement, at the option of Lender, pursuant to the applicable statutes, ordinances, or rules of civil procedure."  (Killick Aff., Ex. 2, Mortgage § 49(b).)

By letter dated March 22, 2011, Plaintiff's counsel sent the borrower a "Notice of Default and Acceleration," which contained a formal demand for "the immediate and full payment of the entire Indebtedness, including, without limitation, all unpaid principal and accrued and unpaid interest, late charges and default interest." [2] (Killick

---

[2] Subject to state law, the Note provides that late charges are computed at the rate of 5% of each late payment, whereas the default interest rate under the Notice is defined as the "Contract Rate" of 6.19% plus 5%.  (Doc. 24, Killick Aff., Ex. 1, Note at 1 and § 4.)

Aff., Ex. N, Notice of Default at 2.)  Appalachian did not respond to the demand, and

instead entirely discontinued making any payments under the Note and Mortgage

beginning in April 2010.[3]  (Compl. ¶ 14; Answer ¶ 14.)

As a result of Defendant's default and continued delinquency, as of February

1, 2012, the amount the lender claimed to be due and owing under the Loan was

$2,655,084.90, with interest continuing to accrue at the contractual default rate in the

amount of $707.35 per day.[4]

## III.  PROCEDURAL HISTORY

Plaintiff commenced this foreclosure action by filing a complaint in the United

States District Court for the Eastern District of Pennsylvania on May 3, 2011.  (Doc.

1.)  The case was subsequently transferred to this Court, and Appalachian filed its

answer and affirmative defenses on July 26, 2011.  (Doc. 10.)  Fact discovery ended

on December 12, 2011, and Plaintiff moved for summary judgment on February 13,

---

[3] Between August 2010 and March 2011, the borrower made principal and interest-only payments in the amount of $14,683, before stopping all payments in April 2011.

[4] This aggregate amount owing as of February 1, 2012, consisted of an unpaid principal balance of $2,275,661.35; accrued interest of $119,733.92; default interest of $125,216.82; late fees of $9,544.40; servicer expenses not including attorney's fees of $96,741.57; and tax advances of $28,186.84.

2012.  (Doc. 26.)  The motion is fully briefed (Docs. 26-1, 30, 31, 32, 33, 35.) and is ripe for disposition.

On the same day Plaintiff moved for summary judgment, Defendant moved to strike certain documents Plaintiff relies on in its summary judgment papers, on the grounds that the documents were not timely produced to Defendant's counsel as part of Plaintiff's initial disclosures, or pursuant to discovery requests.  (Doc. 26.)  This motion is also fully briefed (Docs. 27, 29, 34.) and is ripe for disposition.

On April 10, 2012, the Court heard oral argument on Plaintiff's motion for summary judgment, and on Defendant's related motion to strike documents, or for an alternative enlargement of the discovery period.  Following this hearing, the parties engaged in settlement negotiations in an attempt to mediate a resolution of this dispute.

On May 1, 2012, the parties wrote to the Court to request that they be provided additional time to continue their settlement talks (Doc. 45.), and the Court entered an order directing the parties to report back to the Court by June 2, 2012, regarding the status of the settlement discussions.  (Doc. 46.)  At the parties' request, the Court subsequently entered an order directing the parties to report back by July 2, 2012, on the status of their negotiations.

Those negotiations ultimately proved unsuccessful, and upon consideration of the pending motions, the Court now finds that Plaintiff is entitled to summary judgment in its favor, and that Defendant's motion to strike, or to enlarge the discovery period is without merit, and would serve no meaningful purpose in a case where the undisputed facts demonstrate that the borrower has been in default of its obligations under the Note and Mortgage for two years.

In addition, upon consideration of the recently filed motion to substitute Amerco as the proper plaintiff in this action pursuant to Rule 25 of the Federal Rules of Civil Procedure, that motion will be granted. The Court finds Plaintiff's arguments that U.S. Bank and Amerco have not demonstrated standing, or have somehow not authenticated the documents identifying the loan documents and their assignments to U.S. Bank and from U.S. Bank to Amerco to be unpersuasive. Amerco will be substituted as the Plaintiff in this action, and will have judgment entered in its favor.

## IV.   <u>STANDARD OF REVIEW</u>

Rule 56(a) of the Federal Rules of Civil Procedure provides as follows:

A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a).[5]   For purposes of Rule 56, a fact is material if proof of its

existence or nonexistence might affect the outcome of the suit under the applicable

substantive law.  Haybarger v. Laurence Cnty. Adult Prob. & Parole, 667 F.3d 408,

412 (3d Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986)).  For an issue to be genuine, "all that is required is that sufficient evidence

supporting the claimed factual dispute be shown to require a jury or judge to resolve

the parties' differing versions of the truth at trial." Id. (quoting Anderson, 477 U.S.

at 248-49).

Accordingly, in support of a motion for summary judgment, the moving party

must show that if the evidence of record were reduced to admissible evidence in

court, it would be insufficient to allow the non-moving party to carry its burden of

proof.  See Celotex v. Catrett, 477 U.S. 317, 323 (1986).  Provided the moving party

has satisfied this burden, "its opponent must do more than simply show that there is

some metaphysical doubt as to the material facts." Scott v. Harris, 550 U.S. 372, 380

(2007).  Instead, if the moving party has carried its burden, the non-moving party

---

[5]   The rule providing for summary judgment was previously set forth in Rule
56(c) of the Federal Rules of Civil Procedure, with some minor differences in the
language then used.  The rule was amended in December 2010 to provide for the
summary judgment standard in Rule 56(a), and by replacing the word "issue" with
"dispute," which "better reflects the focus of a summary-judgment determination."
Rule 56, Advisory Committee Notes.

must then respond by identifying specific facts, supported by evidence, which show a genuine issue for trial, and may not rely upon the allegations or denials of its pleadings. See Martin v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007); see also Fed. R. Civ. P. 56(c).

In adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, Anderson, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party, Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. Id. Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. Anderson, 477 U.S. at 252; see also Big Apple BMW, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its

opponent.  It thus remains the province of the factfinder to ascertain the
believability and weight of the evidence.

Id.  In contrast, "[w]here the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party, there is no genuine issue for trial." Matsushita

Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal

quotation marks omitted); NAACP v. North Hudson Reg'l Fire & Rescue, 665 F.3d

464, 476 (3d Cir. 2011).

Once the moving party has shown that there is an absence of evidence to

support the nonmoving party's claims, "the non-moving party must rebut the motion

with facts in the record and cannot rest solely on assertions made in the pleadings,

legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d

195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

If the nonmoving party "fails to make a showing sufficient to establish the existence

of an element essential to that party's case, and on which that party will bear the

burden at trial," summary judgment is appropriate.   Celotex, 477 U.S. at 322.

Summary judgment is also appropriate if the non-moving party provides merely

colorable, conclusory, or speculative evidence.   Anderson, 477 U.S. at 249.

Moreover, a party who seeks to resist a summary judgment motion by citing to

disputed material issues of fact must show by competent evidence that such factual

disputes exist.  Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. Of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982)." [A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969).  Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

## V.   DISCUSSION

### A.   Plaintiff's Motion for Summary Judgment

The question presented in Plaintiff's motion for summary judgment is straightforward:  is a lender entitled to summary judgment in a mortgage foreclosure action, where the borrower concedes that it has been in material default under the terms of a note and mortgage for two years, and where the borrower admittedly has

failed to make any payments of any kind under the Note and Mortgage in more than 16 months, resulting in outstanding indebtedness in excess of $2.6 million?  We find the answer to this question is plainly in the affirmative, and we, therefore, will grant Plaintiff's motion, and enter judgment in the lender's favor.

"In a mortgage foreclosure action, the plaintiff must demonstrate the existence of an obligation secured by a mortgage, and a default on that obligation."  Bank of America, Nat. Ass'n v. Scranton Center Holdings, LP, No. 10-CV-1251, 2012 WL 1965415, *2 (M.D. Pa. May 31, 2012) (quoting Chemical Bank v. Dippolito, 897 F. Supp. 221, 224 (E.D. Pa. 1995)).  Where a mortgagor admits that it is in default of its obligations under the mortgage, or where there is no dispute that the mortgagor has failed to pay its obligations under the mortgage and the recorded mortgage is in a specified amount, then summary judgment is appropriate.  See Wilson v. Parisi, 549 F. Supp. 2d 637, 655 (M.D. Pa. 2008).

Application of these standards to the case before the Court is straightforward. Appalachian admits that it signed the Note and the Mortgage.  (Doc. 10, Answer ¶ 15.)  There is no reasonable dispute regarding the terms of either the Note or the Mortgage.  It is equally clear that the Mortgage was properly recorded with the Recorder of Deeds for Luzerne County, Pennsylvania, on January 3, 2007, and again

16

following the assignment of the Mortgage from LaSalle to Wells Fargo in March 2007, and again after Wells Fargo assigned the Mortgage to Plaintiff in June 2009.

The Note and Mortgage together required the borrower to pay principal and interest in the amount of $14,683.69, as well as additional sums for taxes, insurance premiums, and a replacement reserve, which brought the aggregate monthly payment due under the Note and Mortgage to $20,408.83 (Note at 1; Mortgage § 3) – a monthly payment amount Plaintiff admitted in its answer. (Doc. 10, Answer ¶ 13(ii).)

Notwithstanding this obligation, Plaintiff has admitted in this case that it unilaterally reduced the amount of its monthly payments starting in September 2010, when it paid only the amounts owed for principal and interest because "it ha[d] become difficult, if not impossible, to remain current on the property's outstanding obligations, including its monthly mortgage payment as they came due.") (Id. and Ex. A.)  Under the terms of the Note and the Mortgage, Plaintiff's failure to pay the amounts due and owing constituted events of default.  (Doc. 24, Killick Aff., Ex. A, Note § 7.1; Ex. B, Mortgage § 21(a).)

Following an event of default under a mortgage, the holder may proceed to enforce the terms of the mortgage either through foreclosure proceedings, or obtaining a judgment and seeking to execute.  Wilson, 549 F. Supp. 2d at 655.  In the case before the Court, Plaintiff has proceeded to exercise these rights by filing a

17

foreclosure action – something it is entitled to do by virtue of Plaintiff's admitted defaults.  Id.  Indeed, as Plaintiff correctly observes, courts in this district have routinely granted summary judgment to mortgagees in cases just like this, where the admitted or undisputed facts demonstrate that a borrower had defaulted on the terms of a note or mortgage.  See, e.g., United States v. Abell, No. 1:09-CV-715, 2012 WL 37627, at *2 (M.D. Pa. Jan. 9, 2012) (summary judgment granted where the undisputed facts demonstrated that the plaintiff-lender loaned money to the defendant, the defendant granted a mortgage to the lender as security for the loan, and the defendant later defaulted); HSBC Bank USA, N.A. v. Keenhold, No.4:CV-08-1024, 2009 WL 523092, at *2 (M.D. Pa. March 2, 2009) ("Because plaintiff has established the existence of an obligation secured by a mortgage and a default on that obligation, we will grant plaintiff's motion for summary judgment."); Wilson, 549 F. Supp. 2d at 655-56 (granting summary judgment where default was undisputed); United States v. Sawicki, No. 4:CV-06-1986, 2007 WL 1760647, at *2 (M.D. Pa. June 18, 2007).

The same result is compelled in the case before the Court, where there is no dispute that Appalachian gave a mortgage to secure its obligations under the Note, and where Appalachian defaulted under the Note and Mortgage and has, in fact, been in default for two years.

In an effort to avoid – or perhaps delay – this inevitable result, Defendant endeavors either to show the existence of disputed issues of material fact, or otherwise to challenge Plaintiff's motion in various ways.  Among Defendant's assertions are:  an argument that U.S. Bank failed to prove it has standing to pursue foreclosure; that the bank otherwise failed to properly apply the borrower's reduced payments; that the bank failed to provide proper notice of the assignments of the loan documents; and that the lender acted commercially unreasonably by commencing this litigation at a time when Appalachian was trying to renegotiate the terms of the loan. Finally, Defendant argues that the Court should decline to consider certain documents that Plaintiff has submitted in support of its motion, on the grounds either that Plaintiff failed to produce these documents timely to Defendant, or because the documents have not been sufficiently authenticated.  We find no merit to any of these arguments, as we explain below.

### 1.     *Plaintiff Has Standing to Foreclose*

First, we reject Defendant's argument that Plaintiff lacks standing because it is an assignee of the Note and Mortgage.  This assertion is meritless, since the Plaintiff executed the Note, which expressly obligated Plaintiff to make payments to LaSalle as the original lender, and also to "its successors and assigns."  (Note at 1.) Similarly, Defendant executed the Mortgage in favor of LaSalle "and its successors

and assigns as holders of the Note." (Mortgage at 1.)  The documents on record demonstrating the transfer of the Note and Mortgage from LaSalle to Wells Fargo, and from Wells Fargo to Plaintiff properly establish the assignment of the mortgage, and we decline to embrace Defendant's assertion that Plaintiff was obligated to do more in order to prove that it was the lawful holder of the Note and Mortgage at the time it brought this action.[6]

Furthermore, we find Plaintiff's affidavit from Andrew Killick is a sufficient attestation to support the lender's claim of default and the amounts outstanding under the Note and Mortgage.  Indeed, other courts have found substantially similar evidence is sufficient to establish standing.  See, e.g., HSBC Bank, 2009 WL 523092, at *2 ("[P]laintiff has provided sufficient evidence of standing, damages and costs by attaching to its complaint a copy of the promissory note and mortgage, documents assigning the promissory note and mortgage to HSBC, and an affidavit attesting to the legitimacy of the request for damages and costs.").

---

[6]We also note that undisputed commercial events thoroughly undermine this speculative claim. If some other entity actually owned this mortgage, one would have expected that entity to step forward and challenge U.S. Bank's claim over the past 17 months while this lawsuit has been pending. yet no such claimant has arisen. Furthermore, if there was a grave commercial doubt as to U.S. Bank's interest in this mortgage, it seems unlikely that Amerco, would have agreed to succeed in interest to this note, yet Amerco has done just that.

### 2.    *Defendant's Claims Regarding Application of Payments are Belied By the Loan Documents Themselves*

Defendant also asserts that U.S. Bank failed to apply properly the reduced monthly payments that the borrower made beginning in August 2010, and which ended in March 2010.  As far as we can tell, Defendant is claiming that even though it had during this time unilaterally reduced the payments that it admits were due, summary judgment is inappropriate because Plaintiff should have, but did not, apply the $14,683.69 reduced payment against the principal and interest charges due each month.

This argument, however, is contrary to the terms of the loan documents.  As Plaintiff observes, Section 3 of the Note expressly provides the manner in which monthly payments were to be applied:

> Each payment will be applied when received first to the payment of any fees, expenses or other costs Borrower is obligated to pay under the Loan Documents, second to the payment of any accrued and unpaid Late Charge, third to the payment of unpaid interest on the Principal Amount, and any excess remaining shall then be applied upon the Principal Amount.

(Killick Aff., Ex. 1, Note § 3.)  The borrower agreed to this application of monthly payments, and we find no basis to conclude that the lender is not entitled to summary judgment simply because it continued to apply Defendant's reduced monthly payments in accordance with this provision.

21

Furthermore, even if there were some merit to the suggestion that the payments should have been applied in a manner contrary to the terms of the loan documents, there is still no dispute that Plaintiff had defaulted under the Note and Mortgage simply by virtue of the fact that it was not making the required monthly payments. Indeed, Plaintiff has made no payments since April 2011, and there have been no payments to apply in any event.   Default in this case is thus undisputed and longstanding.

### 3.   *Defendant Had No Right to Review Assignment Documents*

Next, we reject Defendant's suggestion that its defaults should be excused because it was not given the opportunity to review the lender's securitization documents or assignments of the loan documents from LaSalle to Wells Fargo, and from Wells Fargo to U.S. Bank.

Nothing in the loan documents or applicable law imposed such a requirement upon the lender.  Indeed, Section 8 of the Note ***obligated*** Appalachian to cooperate in any effort of the lender to sell, transfer or securitize the loan – it does not create any ***right*** in the borrower to inspect assignment documents, or to participate in the process unless required by the lender to do so.  (Killick Aff., Ex. 1, Note § 8.)  The fact that Plaintiff was required to help facilitate any such transfer does not confer upon Plaintiff the right to be consulted, or to review materials generated as part of any

potential or actual assignment of the Note and Mortgage.  Defendant's attempt to create an entitlement to review assignment documents out of its obligation to cooperate in any loan transfer is baseless, since the terms of the loan documents created only an obligation on Defendant's part.

### 4.    *The Killick Affidavit Adequately Authenticates Documents*

Defendant also tries to argue that the Court should not consider certain exhibits to Andrew Killick's affidavit offered in support of the summary judgment motion on the grounds that the documents are not adequately authenticated.  (Doc. 30, at 13-14.) But as Plaintiff has pointed out, the burden of authentication is "slight," Lexington Insurance Co. v. Western Pennsylvania Hospital, 423 F.3d 318, 328 (3d Cir. 2005) (quoting McQueeney v. Wilmington Trust Co., 779 F.2d 916, 928 (3d Cir. 1985), and this burden is satisfied "by evidence sufficient to support a finding that the matter in question is what its proponent claims", Federal Rules of Evidence 901(a).

We find that through his sworn affidavit, Mr. Killick adequately identified himself as an asset manager with CWCapital Asset Management, LLC ("CWCapital"), which served as the Special Servicer for U.S. Bank National Association in its capacity as the Trustee under the Commercial Mortgage Trust of which the Note and Mortgage were a part.  (Killick Aff. ¶¶ 1, 2.)  Mr. Killick attested to the fact that CWCapital received executed originals of four loan documents, which

are attached to the affidavit at Exhibits C, D, F, and G, and that the servicer had in its files true and correct copies of Exhibits I and L.

Mr. Killick's affidavit demonstrates to the Court's satisfaction that these documents were maintained in the ordinary course of CWCapital's business, and we agree with Plaintiff that they are further corroborated by the other documents in this case, which Appalachian has conceded are authentic.  On these facts, and upon consideration of the documents, we find that they are properly authenticated, and that it is appropriate for the Court to consider them in connection with ruling upon the summary judgment motion.

### 5.     *Defendant's Motion to Strike is Without Merit and Provides No Basis to Delay the Entry of Judgment in this Action*

In addition to opposing Plaintiff's motion for summary judgment, Defendant also sought to delay or frustrate Plaintiff's efforts to foreclose by moving to strike certain exhibits from the summary judgment record, or, alternatively, to reopen discovery because U.S. Bank "relies on documents which were not included in its initial disclosures and not produced until after the close of fact discovery." (Doc. 27, at 1.)  We find no basis to grant the requested relief, because it appears in light of the undisputed facts of this case, which demonstrate beyond argument that Defendant is in default of its obligations under the Note and Mortgage.

It is unnecessary to provide a detailed recitation of Defendant's contentions regarding Plaintiff's asserted failure to make initial disclosures, or to make available for Defendant's inspection the original trust documents, the Pooling and Servicing Agreement, or a spreadsheet that showed the lender's application of Appalachian's monthly payments. We have considered the parties competing viewpoints as to what transpired during the course of discovery, both in their briefs, and also during counsel's exchange at oral argument in this matter, and conclude not only that Plaintiff did not violate its obligations to make timely initial disclosures or discovery responses, but also that Defendant's attempt to strike documents from the summary judgment record or to prolong this litigation through additional discovery would serve no useful purpose in this case given Defendant's conceded defaults on this loan over the past two years.

Defendant has framed its motion to strike as one seeking discovery sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure. In particular, Defendant cites to Rule 37(c)(1), which provides in part that "[if] a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion . . . unless the failure was

substantially justified or harmless."[7]   This Court follows a four-part test to determine

whether exclusion of evidence is an appropriate sanction under Rule 37(c):

> In considering whether the exclusion of evidence is an appropriate
> sanction for failure to comply with discovery duties, we must consider
> four factors: (1) the prejudice or surprise of the party against whom the
> excluded evidence would have been admitted; (2) the ability of the party
> to cure that prejudice; (3) the extent to which allowing the evidence
> would disrupt the orderly and efficient trial of the case or other cases in
> the court; and (4) bad faith or willfulness in failing to comply with a
> court order or discovery obligation.

Tolerico v. Home Depot, 205 F.R.D. 169, 177 (M.D. Pa. 2002) (quoting Nicholas v.

Pennsylvania State University, 227 F.3d 133, 148 (3d Cir. 2000)).   Rule 37(c) does

not dictate exclusion in all cases however, and where discovery violations have been

found, a court may impose lesser sanctions that it finds in the exercise of discretion

to be more suitable.   Id.   The Third Circuit has underscored that "even under Rule 37,

"'[t]he imposition of sanctions for abuse of discovery . . . is a matter within the

discretion of the trial court.'"   Newman v. GHS Osteophathic, Inc., 60 F.3d 153, 156

(3d Cir. 1995).   Furthermore, in the exercise of that discretion, we remain mindful

that "[c]ourts in the Third Circuit should exercise particular restraint in considering

---

[7] Rule 26(a) obligates parties to make certain initial disclosures without
waiting for discovery requests, and Rule 26(e) imposes a duty on litigants to
supplement their initial disclosures or other discovery responses upon learning that
responses made have been incomplete.   Fed. R. Civ. P. 26(a), (e).

motions to exclude evidence." ABB Air Preheater, Inc. v. Regenerative Environmental Equipment Co., 167 F.R.D. 668, 671 (D.N.J. 1996).

In exercising our discretion with appropriate restraint, and after applying the foregoing legal principles and guidelines to the facts as we find them in this case, we are compelled to find that no discovery violations have occurred, no sanctions are warranted, and there is no basis to enlarge the discovery period or otherwise delay resolution of this action.

At the outset, the Court is satisfied that there have been no discovery violations on Plaintiff's part, both because Plaintiff reasonably identified for Defendant Mr. Killick's identity, and those documents upon which U.S. Bank would rely in this matter, many of which were attached as exhibits to the complaint, or as part of Plaintiff's initial disclosures, which were produced on November 23, 2011.

Moreover, we are also persuaded that Plaintiff's counsel timely communicated to Defendant's counsel prior to the close of discovery regarding the availability of certain other documents, including the Pooling and Servicing Agreement, which could be made available for inspection upon the execution of a protective order. Even though it appears undisputed that Defendant's counsel never followed up with Plaintiff's counsel during the discovery period to review these materials, Plaintiff's counsel had the documents scanned onto compact discs, and produced them to

Defendant's counsel, who never objected to otherwise responded to the productions before Plaintiff moved for summary judgment.   (Doc. 29, Ex. 3, Affidavit of Raymond A. Quaglia, ¶¶ 19-24.)  On these facts, which we credit, we find no merit to Defendant's suggestion that Plaintiff was engaging in "blindsiding" or "bad faith" for "conceal[ing] the existence of relevant documents", as part of some effort to prevent Defendant from pursuing discovery regarding the documents. (Doc. 27, at 8.)

Not only do we find as a factual matter that Defendant is not entitled to relief on its motion, but we fail to see any other reasonable basis for granting the sanctions or relief requested, or the purpose it would serve in this action, where there is no dispute that Defendant is in default of its obligations, and has been in default for some two years.  Defendant's motion, which it claims to have filed in order "to reduce the prejudice Defendant is facing as a result of Plaintiff's disregard for the rules of this Court," (Doc. 27, at 9.), would serve little purpose other than to delay the inevitable judgment in Plaintiff's favor – something that is compelled by the undisputed facts.  We are further unable to embrace Defendant's assertion that it has been prejudiced by what we find to be Plaintiff's appropriate discovery production in this action.

Accordingly, for the foregoing reasons, Defendant's motion to strike or for an enlargement of discovery will be denied.

## B.    Amerco's Substitution Motion

Finally, U.S. Bank and Amerco, the new trustee that took assignment of the loan documents from U.S. Bank, have jointly moved to substitute Amerco as the proper plaintiff pursuant to Rule 25(c) of the Federal Rules of Civil Procedure, following Amerco's purchase of Defendant's Note and Mortgage in June 2012. Defendant has opposed this request, and in so doing has echoed arguments made in support of its brief in opposition to summary judgment – arguments we have found unavailing.

Rule 25(c) provides that:

> If an interest is transferred, the action may be transferred, the action may be continued by or against the original party, unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party. The motion must be served as provided in Rule 25(a)(3).

Fed. R. Civ. P. 25(c). "Because joinder or substitution under Rule 25(c) does not ordinarily alter the substantive rights of parties but is merely a procedural device designed to facilitate the conduct of a case, a Rule 25(c) decision is generally within the district court's discretion." Luxliner P.L. Export Co. v. RDI/Luxliner, Inc., 13 F.3d 69, 71-72 (3d Cir. 1993). In order to determine whether an entity is a transferee

of an interest that triggers Rule 25(c), and to exercise its discretion under Rule 25(c), a district court must apply the law to the facts presented in the particular case. Id. at 72.

In this case, this analysis is straightforward and admits of a simple answer. Amerco is currently the owner of the loan that is the subject of the foreclosure action, having purchased the loan in June 2012.  These facts are established to the Court's satisfaction the basis of the affidavit of Jason Berg, which is attached as an exhibit to Amerco' motion.  (Doc. 48-2, Affidavit of Jason Berg.)  Defendant does not so much dispute Amerco's ownership of the loan, or Berg's sworn representations regarding Amerco's succession to U.S. Bank's interests, as it argues that to permit substitution at this point in the proceedings would cause confusion regarding the issues that Defendant tried to raise in its brief opposing summary judgment.  But we have already disposed of these arguments, and found that U.S. Bank has standing and legal authority to foreclose on the Mortgage in light of Defendant's longstanding default of its obligations under the Note and Mortgage.  Mr. Berg's representations in his affidavit, which are supported by the documents attached thereto evidencing Amerco's purchase of the loan to Defendant, establish that Amerco has the same standing with respect to the loan that U.S. Bank enjoyed prior to the transfer of interest.  (Id.)

As there is no reasonable dispute that Amerco has merely succeeded to U.S. Bank's interest with respect to the Note and Mortgage, we find that Amerco should be substituted as the plaintiff, and have judgment entered in its favor to permit Amerco to foreclose on the Mortgage.

## VI.   ORDER

Accordingly, upon due consideration, and for the reasons set forth above, IT IS HEREBY ORDERED THAT:

1.   The joint motion of U.S. Bank and Amerco to permit Amerco to be substituted as the Plaintiff in this action (Doc. 48.) is GRANTED. Pursuant to Federal Rule of Civil Procedure 25(c), Amerco Real Estate Company is hereby substituted for U.S. Bank National Association, as Trustee for the registered holders of CD 2007-CD4 Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series CD 2007-CD4, as the Plaintiff in this action and in the caption.

2.   Defendant's motion to strike, or to enlarge the discovery period (Doc. 26.) is DENIED.

3.   Plaintiff's motion for summary judgment (Doc. 24) is GRANTED as follows:

a. Judgment is entered in favor of Plaintiff and against Defendant in the amount of $2,655,084.90 plus interest at the rate of $707.35 per day from February 2, 2012, to the date of any Marshal's sale or any other sale of the property.

b. The promissory note and mortgage between Plaintiff and Defendant are foreclosed as to the real property described therein.

c. The mortgaged property shall be sold according to the following procedures:

  i. The United States Marshal for the Middle District of Pennsylvania is directed to sell the real property specified in the mortgage between Plaintiff and Defendant for cash to the highest bidder at a public, judicial sale pursuant to 28 U.S.C. § 2002, with notice of such sale to be published once per week for four consecutive weeks prior to the sale in one newspaper regularly issued and of general circulation in the county and judicial district in which the real property is situated.

  ii. Ten percent of the highest bid must be deposited in certified check or cashier's check with the United States

Marshal by the bidder immediately upon the property being struck down to the bidder.  The balance of the purchase money must be paid in certified or cashier's check by the highest bidder to the Marshal within 10 days after the sale is confirmed by the Court, without demand for the same being made by the Marshal.  It is the highest bidder's responsibility to ascertain the date of confirmation.  If the highest bidder fails to settle, all of his rights in the real estate shall cease and be completely void and the property may be re-advertised and sold by the Marshal without further order of the Court at the risk of the defaulting bidder, whose deposit shall be forfeited; and in case of a deficiency on such resale, he shall make good the same to the person thereby injured.  The highest bidder shall take the real estate subject to and is to pay all current state and local taxes, water rents or charges, sewer rents or charges, and municipal claims, and any other claims, charges and liens against the property which are not divested by the Marshal's sale, and shall pay all state, local and federal

transfer taxes and stamps.  If Plaintiff is not the successful bidder, Plaintiff will automatically be registered as the second highest bidder at the judgment amount and may proceed to make settlement with the Marshal in the event of default by the highest bidder.

iii. Plaintiff or its nominee is granted right of entry at reasonable times to the subject premises for purposes of pre-sale inspection and Marshal's sale with the right to inspect the buildings, books, records, and accounts, and all other items, things, and information necessary for the inspection, advertisement and sale of the subject premises.

iv. Motion for Confirmation of the public sale shall be made by Plaintiff to the Court within 30 days after the date of sale.

d. Upon confirmation of the sale, the Marshal shall hold the proceeds of the sale after costs and expenses of the sale pending distribution pursuant to further Order of the Court.

e. Plaintiff shall be paid the amount adjudged due pursuant to the distribution of the proceeds of the sale.

f.   The Clerk of Court shall deliver a copy of this Order to the United

States Marshal.

g.   The Court retains jurisdiction over this matter for the granting of

additional Orders that may be required.

SO ORDERED this 20th day of August 2012.


*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge